OPINION
{¶ 1} Appellant Anthony M. Sinclair appeals from his conviction, in the Delaware County Court of Common Pleas, for trafficking in marihuana. The appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.
 {¶ 2} On September 14, 2003, Robin Olson and Christopher Mickens were on duty as safety officers on the campus of Ohio Wesleyan University, where appellant was a student. On that day, they proceeded to dormitory room 333 in Stuyvesant Hall to speak to one of the residents on an unrelated case. One of the residents of 333 let the safety officers into the room, and then proceeded into adjoining room 335, which was separated from 333 by a shared bathroom. The safety officers immediately smelled marihuana smoke. Appellant, who lived in room 335, was not present at the scene. The officers thereupon noticed a marihuana "bong" placed in plain sight on a chair. In addition, a small metal lockbox was discovered in a desk in 335. Officer Olson noticed a strong marihuana smell coming from inside the box.
 {¶ 3} At that point, Olson and Mickens contacted the Delaware Police Department, as per university policy regarding suspected drugs found on campus. Officer Scott Powell of the Delaware City Police Department responded, and took control of the drug paraphernalia. Powell declined to seize the lock box, however. Two days later, Delaware Police Detective Mark Leatherman reviewed the reports and proceeded to obtain a search warrant for the lock box, which was being held in the university's safety office. Upon opening the box, Leatherman discovered cash, a scale, a glass marihuana pipe with residue, and about 10.9 grams of unburnt marihuana.
 {¶ 4} Appellant was thereupon charged with trafficking in marihuana. Appellant thereupon filed a motion to suppress, which the trial court denied following a hearing on February 18, 2004. The matter proceeded to a jury trial on August 24 and 25, 2004. The jury found appellant guilty, with the additional specification that the offense was committed in the vicinity of an elementary school. The trial court sentenced appellant on October 6, 2004, to three years of community control sanctions.
 {¶ 5} On November 3, 2004, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:
 {¶ 6} "I. THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE.
 {¶ 7} "II. THE TRIAL COURT ERRED IN ALLOWING THE STATE, OVER OBJECTION, TO IMPEACH THEIR (SIC) OWN WITNESS BY HEARSAY TESTIMONY AND THEN INSTRUCT THE JURY THAT SUCH TESTIMONY IS SUBSTANTIVE EVIDENCE."
 I. {¶ 8} In his First Assignment of Error, appellant contends the trial court erred in denying appellant's motion to suppress the evidence obtained from the dorm room. We disagree.
 {¶ 9} There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623,620 N.E.2d 906; Guysinger, supra.
 {¶ 10} In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue raised in his motion to suppress. Thus, in analyzing appellant's sole Assignment of Error, we must independently determine whether the facts meet the appropriate legal standard.
 {¶ 11} Appellant does not herein challenge the actual police search of the lock-box following the obtaining of the warrant. However, he contends that all evidence obtained from the dorm room, including the lock-box, should have been suppressed as fruits of the poisonous tree. See Wong Sunv. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Our first task is thus to analyze the nature of the actions by the university safety officers.
 {¶ 12} Ohio law distinguishes between private police officers such as security guards and private detectives, and peace officers employed by governmental entities. See, e.g., R.C. 2921.51(A). Furthermore, "[e]vidence discovered and seized by private persons is admissible in a criminal prosecution, regardless of whether such evidence was obtained by legal or illegal methods, so long as there is no government participation in the search." State v. Hegbar (Dec. 5, 1985), Cuyahoga App. No. 49828, citing Burdeau v. McDowell (1921), 256 U.S. 465, 475 (additional citations omitted). "Under the interpretation of the Fourth Amendment set forth in Burdeau, supra, most courts have held that evidence of crime obtained by private investigators and security guards, who hold no special sovereign authority; have no formal affiliation with the sovereign; or are not acting at the direction of or controlled by a governmental agency, is admissible at trial. This view is premised upon the rationale that the primary function of privately employed security officers is protection of their employers' property, rather than law enforcement." Hegbar, citing U.S. v. Francoeur (C.A. 5, 1977),547 F.2d 891, 893-94; State v. McDaniel (1975), 44 Ohio App.2d 163,170-174.
 {¶ 13} During the suppression hearing, Officer Olson repeatedly emphasized that he and Officer Mickens were acting of their own volition in their role as private university safety officers when they first went to Stuyvesant Hall on the day in question, and that they did not even communicate with the Delaware Police until after they had entered the room and discovered the contraband. Tr., Suppression Hearing, at 5-11. Appellant nonetheless suggests that Ohio Wesleyan University safety officers should be recognized as "state university law enforcement officers" under R.C. 3345.04. As we herein take judicial notice that Ohio Wesleyan is a private liberal arts college, we find no merit in this proposition. Appellant urges, in the alternative, that in the college campus setting, a private safety officer effectively acts with governmental or sovereign authority. Appellant provides no authority in support of this proposition, and we are unwilling to expand the historical interpretation of the Fourth Amendment in such a manner. Cf.State v. Goffee, 161 Ohio App.3d 199, 205, 2005-Ohio-2596, ¶ 16.
 {¶ 14} Appellant raises additional arguments concerning whether he impliedly consented to the search via his enrollment as a student, and the import of the university's student manual regarding search procedures on college property. See, e.g., Bumper v. North Carolina (1968),391 U.S. 543. However, as we conclude the Fourth Amendment was not implicated under the facts and circumstances presented, we find these issues moot.
 {¶ 15} Appellant's First Assignment of Error is overruled.
 II. {¶ 16} In his Second Assignment of Error, appellant contends the trial court erred in allowing the prosecutor to question a police officer concerning appellant's roommate's out-of-court statements as to ownership of the lock-box. We disagree.
 {¶ 17} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180, 510 N.E.2d 343. Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027. As a general rule, all relevant evidence is admissible. Evid.R. 402. However, under Evid.R. 802, hearsay evidence is not admissible, "except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."
 {¶ 18} At trial, the State offered the testimony of Ashah Nelms, one of appellant's roommates at the dorm. Before the trial had commenced, the State had asked the court for permission to possibly impeach Nelms, depending on whether he changed his original story, as told to the Delaware Police, that the lock box belonged to appellant. The State presently concedes that this scenario would not meet the "surprise" prerequisite for impeachment of a prosecution witness under Evid.R. 607. Appellee's Brief at 11. However, during the cross-examination of University Safety Officer Mickens, defense counsel asked if anyone ever made any statements as to ownership of the lock box. Mickens answered: "Not that I heard." Tr. at 84. Later, the State presented testimony, over defense objection, from Delaware Police Officer Powell to the effect that Nelms had indeed told him the lock box belonged to appellant. Tr. at 111. Appellant challenges this testimony as hearsay and as an improper impeachment of Nelms.
 {¶ 19} Upon review of the record, we agree with the State's position that defense counsel's question to Officer Mickens opened the door for a representation of what other witnesses had said concerning ownership of the lock box. See, e.g., State v. Hudson, Delaware App. No. 02CAA12065,2003-Ohio-7049. If the State had not been given the opportunity to so examine Officer Powell, the jury would have been left with the impression that the question of ownership had never been asked by the police. Furthermore, Officer Olson testified that appellant telephoned him the morning after the search, and stated he wanted to come and retrieve his lock box. Tr. at 40. Appellant never followed up on his request. Id. The State also introduced evidence that the lock box was discovered in appellant's desk, surrounded by some items with appellant's name on them. Tr. at 36-37, 57, 233. In light of such evidence, even if Officer Powell's testimony were improper, we would find such alleged hearsay error would not affect appellant's substantial rights and would therefore constitute harmless error. See Crim.R. 52(A).
 {¶ 20} Appellant's Second Assignment of Error is overruled.
 {¶ 21} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Delaware County, Ohio, is affirmed.
Wise, J., Farmer, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.
Costs to appellant.